The opinion of the court was delivered by
Monroe, J.
The relators in this case are qualified voters and taxpayers of the Tenth Ward of the City of New Orleans. They allege, that at the municipal election, held upon November 7th, 1899, councilmen were elected to represent the different wards, or representative districts, of the city, and that, among them, Ferdinand Reusch, Jr., was elected to represent the Tenth Ward; but that said Reusch was thereafter interdicted, and was, for that reason, and is now, unable to qualify, and that the Tenth Ward is, therefore, without a representative in the municipal Council. They further allege that they have presented a petition to the Mayor representing that they, and the other qualified electors of said Tenth Ward, have the right, under Articles 319 and 320 of the Constitution, to elect a representative in place of *1605 said Reusch, and that they have presented a (petition to the Mayor praying that an election be ordered for the purpose, but that the Mayor has declined to comply with said prayer, and has informed relators that a substitute for, or successor to, said Reusch would be elected by the other members of the Council, and that relators are informed and believe that such action will be taken by said members of the Council, claiming to act under the authority of Section J9 of Act 45 of 1896. Relators further allege that said section is, and always has been, without legal effect, for the reason that it was repealed and annulled by the Constitution of 1898, and is in contravention of Articles 319 and 320 of said Constitution. Relators further allege that the proposed action of said Mayor and Council will leave the Tenth Ward, which is one of the most populous in the city, without representation in the municipal legislative body which is vested! with power to levy taxes and disburse the same and otherwise administer the government thereof, and that they are entitled to the writ of mandamus, to compel the said Mayor and Council to order an election in said ward, to the end that such want may be supplied. By supplemental petition, relators aver that they were in error in alleging that Ferdinand Reusch, Jr., had been interdicted, but that the fact is that he was insane beffore the election, and has been so over since, ahd is confined in a retreat, and that proceedings for his interdiction have been filed, and a temporary curator appointed, and that a committee of the Council has reported that he is notoriously insane, and that a vacancy exists in the office to which he was elected.
The Mayor of New Orleans and the members of the City Council, for answer and return, admit that Ferdinand Reusch was elected to the Council to represent the Tenth Ward, as alleged; that he is notoriously insane; that 'a vacancy exists in the office to which he was elected; that the Tenth Ward' is without a representative in the Council, and that the vacancy should be filled. They further admit that the Council was about to fill such vacancy in the manner provided by Section 79 of Act 45 of 1896 (the charter of the city), i. e., by the election viva voce, by the other members of the Council, of a citizen having the qualifications required for the 'office. They allege that there is no law making it their ministerial duty to order an election as prayed for by the relators, but that it is made their ministerial duty by the law under which they propose to act, to fill said vacancy in the manner, contemplated; that *1606 Article 319 of the Constitution has no application to vacancies in public offices in New Orleans; that Article 171 provides that the General Assembly shall determine how all vacancies shall be filled; that Section 79 of Act 45 of 1896 makes such provision with reference to the office in question and has not been repealed or annulled; and in the absence of any other law, is continued in force by Article 325 of the Constitution. Respondents further aver that the Civil District Court is without jurisdiction rations materiac. and they pray that relators’ application be dismissed.
The facts, as thus set forth in the pleadings, are admitted, and this court is called upon to deal only with the controverted questions of law which are presented. The objection to jurisdiction does not appear to have been urged in the court a qua, is not urged here, and is, presumably, abandoned.
Section 79 of the present city charter (Act 45 of 1896) reads as follows, to-wit:
“Section 79. Vacancies occurring in the office of councilmen, or recorder shall be filled by election, viva voce, by the Council, of a citizen having the qualifications required for such office, and such person shall serve for the unexpired term of the office.”
At the time that this law was adopted (July, 1896), the affairs of the city were administered by officers who had been elected in April, 1896, agreeably to the provisions of the then existing charter (Act No. 20 of 1882), and who were to hold office for four years. Under that charter, provision was made for filling vacancies in the Council as follows:
“Section 56. Vacancies occurring among the councilmen shall be filled at once by election. In such a case, it shall be the duty of the Mayor, and, in case of failure on his part, of the Council, to at once order an election to fill the same; said vacancy to be filled in the same manner and by the same constituency that had elected the former holder of a seat in the Council.
In 1898, a vacancy occurred in the Council by reason of the resignation of one of the members, and it was proposed to fill it by viva voce election by the Council, as provided in the Act of 1896, but some of the constituents of the member who had resigned applied, as the relators in this case have done, for a mandamus to compel the ordering of an election under the Act of 1882. In considering the case, thus presented, *1607 this court found, comparing and construing the two acts together, that the provision in the act of 1896 as to the manner of filling vacancies in the office in question was not intended to apply to offices which had been originally filled by election under the Act of 1882, but that its operation was suspended until the expiration of the terms of such offices, and that vacancies occurring during such terms were to be filled in the manner prescribed by the Act of 1882, and the mandamus was made peremptory.
The language of the opinion was, in part, as follows, to-wit:
“So long, therefore, as the present Council holds office, vacancies occurring therein are to be filled pursuant to the provisions of the old law, and Section 79 of the Act of 1896, providing a different mode of filling vacancies, is held suspended in its operation until the happening of the condition that alone can give it potency and force, vie: the election of a npw Council, under the provisions of the present municipal charter.”
In reaching this conclusion, however, it was stated in the opinion that the .question of the constitutionality of the mode of filling vacancies provided by Section 79 of the Act of 1896 was pretermitted, as unnecessary to the decision of the case. State ex rel. Kinberger vs. Mayor, 51st Ann., 99.
It follows from this that the section in question, whilst a law in some sense (unless void by reason of its contravening the Constitution of 1879), was without force or effect and was condemned to remain in a condition of suspended vitality until after the election as provided by the city charter of 1896, and that election having now been held, and the vacancy which it is proposed to fill having occurred among the officers thus elected, said section must find its application, unless the question of constitutionality, which was pretermitted in the case of Kinberger, stands in the way.
The members of the present City Council, though elected in November, 1899, by virtue of the express provisions of the Constitution, Article 207, were inducted into office in May, 1900, and will hold tKe same for four years from the latter date. The Council is a body composed of one member from each of the fifteen representative districts into which the city is divided, and two additional members, elected at large from the First and Fourth Municipal Districts, respectively. The Tenth Ward, constituting the Tenth Representative District, is situated in the Fourth Municipal District, and is entitled to one represen *1608 tative to be elected by the qualified voters of the ward, and who must be an actual resident within its limits, and to further representation by the councilman elected at large for the Fourth Municipal District, who may be a resident of either of the three wards composing that'district. It is admitted that there is a vacancy in the office of councilman for the Tenth Ward, resulting from the inability to qualify of the person who was elected, and, as no other election has ever been held under the present law and the present subdivision and assignment of representatives, it follows that the office has never been filled; and it also follows that, if it is filled in the manner proposed by the respondents the citizens and electors of the Tenth Ward will, for the next four years, labor under the disadvantage of being governed, so far as municipal affairs are concerned, by a legislative body composed of members chosen by other constituencies, together with a member, elected by the other members, to represent them. In other words, that they will be denied the right to choose their own representative, except in so far as it may be said that they exercise that right in choosing the representative from the Fourth Municipal District. This is as much a denial of representation as though the members of the General Assembly from one parish were elected by those from the other parishes, or as though the members of Congress from one State were elected by those from the others; and it amounts to no representation at all, since no people can be said to be represented, in the sense in which the term is understood for the purposes of a Republican government, who have no voice in the selection of the person designated to represent them, and especially is this true where that person iá selected by ihose having, perhaps, conflicting interests to subserve. The question, then, is, does the legislation relied on effect this result?
Prior to the adoption of the present Constitution, the authority of the General Assembly with respect to the establishment of municipal corporations, generally, was, no doubt, very extensive, but there has been a saving clause in all the Constitutions of this State, with the exception of that of 1868, whereby certain rights have been reserved to the people of New Orleans, and that clause was distinctly broadened and made more effective by the convention which adopted the present Constitution, in which are to'be found the following provisions, to-wit:
Article 319. The electors of the City of New Orleans, and of any *1609 political corporation which may be established within the territory now, or which may hereafter be, embraced within the territorial limits of said city, shall have the right to choose the public officers who shall be charged with the exercise of the police powers, and with the administration of the affairs of said corporation, in whole, or in part.”
Article 320 excepts from the operation of the foregoing provisions, the Board of Liquidators of the Oity Debt, and Boards of Commissioners, the members of which may be elected by the Council or appointed by the Mayor, as also certain other boards. There is no exception, however, in regard to the members of the Council, and it is a significant fact that the article cited above is broader, and at the same time more specific, than that which was contained in the Constitution of 1879, in that Article 253 of the Constitution of 1879 secures to the citizens of New Orleans, the right to appoint “the officers necessary for the administration of the police of said city pursuant to the mode of election whiah shall be provided by the General Assembly ” whilst the present article provides that the "electors * * * shall have the right to choose the public officers who shall be charged with ihe exercise of the police powers and with the administration of ihe affairs of said corporation in whole or in part;” the clause reading “pursuant to the mode of election which shall be provided by the General Assembly” being omitted. A reason for these changes may readily be found in the fact that it had not been altogether settled how far the reservation of right under the terms of the preceding Constitutions extended beyond officers “necessary to the administration of the police” giving to the word “police” a restricted signification; hence, in the Constitution, the language “charged with the exercise of police powers, and with the administration of ihe affairs of said'corporation, in whole ofr in pari,” was used. Again, the last clause of Article 253 of the Constitution of 1879— “pursuant to the mode of election which shall be provided by ihe General Assembly” — led to the conclusion that what the citizens of New Orleans were reserved the right to do, could, under the authority of the General Assembly, be as well and as lawfully done, by a Council, the members of which had been elected by such citizens, and hence, it was held that the City Council could properly elect and re-elect the members of the Board of Police Commissioners (State vs. City, 41st Ann., 156). In the new Constitution, therefore, the language upon which that construction was based was omitted, so that the officers with the *1610 exceptions specifically mentioned, are to be chosen by the electors, themselves, and not by their representatives, in Council assembled.
It will be remarked that nothing appears in the article which we are considering, as to the mode of filling vacancies. It certainly will not be denied, however, that a person who goes into the Council to take the place of one who, having been legally elected, is unable to qualify, and who participates in the official action of that body, is “an officer charged with the exercises of the police powers, and with the administration of the affairs” of the corporation, within the meaning of the Constitution. And, for the purposes of the question of the right of the electors, whom he is supposed to represent, to a voice in the selection of such x>erson, it is wholly immaterial whether he goes into the office to fill a vacancy occasioned by sickness, death or resignation, or to fill a vacancy occasioned by the expiration of the term of his predecessor, or to fill an office newly created, and to which no one has ever, previously, qualified. In the instant case, the office of representative from the Tenth Ward, as created by the Act of 1896, has never yet been filled by anyone, and if it is now filled in the manner proposed by the respondents the incumbent will occupy the unique position of serving the entire term of an office which has been vacant from the beginning of its creation; of representing a! constituency who will have had no voice in his selection; and, without having' been so chosen, of participating in the administration of the affairs of a city, the electors of which have the constitutional right to choose all officers discharging such functions.
As a matter of course, there might be other articles in the Constitution, besides Article 320, which it would be necessary to interpret with Article 319. In fact we have found that to be the case. Thus, Article 167 provides that “vacancies occurring from any cause in the judicial offices in the Parish of Orleans, shall be filled by axrpointment of the Governor, by and with the advice and consent of the Senate,” etc. And, when it became necessary to reconcile this article with Article 319, it was held that it should be simply read into the latter article, as an exception to the rule, there laid down, that officers shall be chosen by the electors. Both articles relate to the same subject matter, to-wit: The manner of selecting officers in the City of New Orleans. The one is general in its terms, and embraces all officers exercising- certain general power's, as also the mode of filling the offices held by them; the other is particular and specific, and applies only to certain among the *1611 officers included in the general provisions, and only to the mode of filling the offices, held by them, in cases of vacancy. There was no difficulty, therefore, in giving to each article its proper application, the general provisions of the one being, pro Lanío, modified by the particular provisions of the other.
It is proper to say, in this connection, and in justice to our learned brother of the District Court, who has denied the application of the relators, partly, perhaps, by reason of an unguarded expression in the opinion in the matter of State vs. Grandjean, 51 Ann., 1102, that the immediate question then being considered related to the filling of a vacancy in a judicial office in the City of New Orleans, for the purposes of which Articles 157 and 319 were construed, and it was said that the sole function of Article 157 was to provide therefor, whilst Article 319 did not “deal with or mention vacancies at all.” The more correct way of stating it would, no doubt, have been to say that the application of Article 157 was particular and specific as to the question at issue, and that of Article 319 general, and hence, that the former controlled in the case then before the court.
The learned counsel for the respondents argues that these familiar rules of interpretation should be applied in construing together Articles 319 and 171, which latter article reads:
“The General Assembly may determine the mode of filling vacancies in all offices, for the filling of which provisions is not made in this Constitution.” But, in order to arrive at the conclusion upon which he insists, the rules invoked would have to be inverted. Article 171, as compared with Article 319, is general, whilst Article 319 is particular. The one refers to all vacancies throughout the State, not otherwise provided for; the other refers to the filling of offices of a certain character in the City of New Orleans alone, and is couched in'language which carries the conviction that it¡ was the intention of the framers of the Constitution to secure to the electors of the .city, themselves, the right, under any and all circumstances, to choose the persons to fill those offices. If there could be any doubt upon this subject, it would be removing by recalling the fact that the convention of 1898 studiously omitted, frdm the present Constitution, the concluding language of Article 253 of the Constitution of 1879, under which it had been held that the General Assembly might vest the power to make such choice in a Council elected by the people, and that a choice by such Council was *1612 equivolent to a choice by such electors. Ancl, also, by considering that Article 320 of the present Constitution specially provides, as exceptions to the rule laid down in Article 319, for cases in which certain officers (members of certain Boards or Commissions) may be elected by the Council, or appointed by the Mayor with the consent of the Council.
It is said that the electors of the Tenth Ward should not be allowed to choose a representative because Article 207 of the Constitution provides that “in the City of New Orleans, parochial and municipal elections shall be held on the Tuesday following the first Monday of November, 1899, and every fourth year thereafter; and that there is no authority for holding an election for municipal officers in the meanwhile. This article refers to the general parochial and municipal elections, and has no application to the filling of vacancies.
It is further argued that the vacancy must be filled agreeably to the provisions of Section 79 of the present city charter, because there would, otherwise, be no law, under which action could be taken, and, without such law, Article 319 of the Constitution would be inoperative, and we are referred to the third paragraph of Article 325 of the Constitution, which reads:
“The provisions of all laws which aré inconsistent with this Constitution shall ’cease upon its adoption, except that all laws which are inconsistent with such provisions of this Constitution as require legislation to enforce them dhall remain in full force until such legislation is haa.'
For the reasons which have been stated, Section 79 of Act 45 of 1896 is inconsistent with the present Constitution, and, therefore, “ceased” upon the adoption of that instrument, if the word “ceased” can be properly applied to a statutory provision which had never become operative; and it could now be given effect, only upon the theory that Article 319 requires legislation for its enforcement. But the conditions existing at the date of its adoption were such that Article 319 requires no such legislation. The City of New Orleans was then provided with a form of government under which the officers referred to therein were elected as contemplated by the article, and under which, as was decided in the Kinberger case, vacancies in such offices were required to be filled in the same manner. The law applicable to the latter subject, and the only law, then, actually in force, was Section 56 of Act No. 20 of 1882.
This court said upon that subject in the ease mentioned: “So long, *1613 therefore, as the present Council holds office, vacancies occurring therein are to be filled pursuant to the provisions of the old law, and Section 79 of the Act of 1896, providing a different mode of filling vacancies, is held suspended in its operation until the happening of the condition, that, alone, can give it potency and force, viz: The election of a new Council, under the provisions of the present municipal charter.”
Section 56 of the Act of 1882 had not, then, been repealed, and its repeal would have been effected by Section 79 of the Act of 1896 — only when the latter became operative, to-wit, after the municipal election in November, 1899. In Hay, 1898, however, the present Constitution was adopted, and said section “ceased,” by reason of its antagonism to that instrument, even assuming that it was not void, ab initio, by reason of antagonism to Article 253 of the Constitution of 1879. It has, therefore, never taken effect, and Section 56 of the Act of 1882 is still in force, and unrepealed; and, its provisions being plain and mandatory, they should be complied with.
It is therefore ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of the relators, directing the issuance of a peremptory writ of mandamus, commanding the respondent, the Mayor of New Orleans, and, in the alternative, the Council of the said city, to order an election, agreeably to the provisions of Section 56 of Act 20 of 1882, to be held in the Tenth Ward of said city, to fill the existing vacancy in the office of councilman from said ward. It is further ordered, adjudged and decreed, that the respondents pay the costs of this proceeding.